Miller, J.
The single question to be determined in this case is, whether the department of public parks of the city of Hew York have the power to discontinue the proceedings had for laying out a military parade ground, or public park, under the provisions of chapter 628 of the Session Laws of 1871. This act conferred authority to lay out and establish such parade ground; and the second section provided that the board of the department of public parks should cause a map to be made showing the location and extent of the same, and certified by them, which was to be filed as directed; and from and after the filing the same should become and be one of the public squares or places and public streets and avenues in said city, with the same intent and effect as if it had been laid out under the act of April 3d, 1807. And that similar proceedings shall be taken, in all respects, in relation to acquiring title, as is authorized by the sixth section of chapter 697 of the Laws of 1867. Section 8 of the act of 1807 declares that the plans and surveys of the commissioners shall be final and conclusive, as well in respect to the city authorities as in respect to the owners and occupants of the lands, etc., and all other persons whomsoever. Section 9 of the same act' authorizes the city authorities to agree with the owners of lands for a compensation, and in case of a disagreement to apply to a justice of the Supreme Court to appoint commissioners to estimate the damages, and upon an assessment being completed the city becomes seized of the land, and may immediately take possession of the same.
Although the plans and surveys, under the eighth section, are declared to be final and conclusive, it will be noticed that *322 the corporate authorities acquired no title or right to take possession' until the assessment was completed. Looking at the provisions of the act of 1871 and the act of 1807, in connection, the meaning of the legislature evidently was, that something was to be done besides the making and filing of a map or plans and surveys, before a public square, park, or street was established; and the clause in the act of 1871, which refers to the act of 1807, merely places the board of department of public parks in the same position, and confers upon them the same authority as the commissioners had under the last mentioned act; and, upon proper proceedings being had for that purpose, and the assessment being made and confirmed, the same effect was produced. Clearly it cannot mean that title became vested before the assessment was made. That absolute title was not acquired, and that the land did not become one of the public squares of the city upon the mere filing of the map as provided, is also manifest by the provisions of the sixth section of the act of 1867, which is referred to in the act of 1871. Title was to be acquired, by this section, whenever the.commissioners should deem it for the public interest to do so, within two years from the time of the filing of the map, as provided in section 2 of the act; and it was declared that all proceedings taken should be had pursuant to such acts as should then be in force relative to the opening of streets, avenues and roads in the city of JSTew York. According to this provision the commissioners were vested with a discretionary power when they deemed it for the public interest to take proceedings; and, hence, in case the public interests did not require it to be done, in their judgment, they ■had a right to refuse to commence any proceedings whatever: Unless this power was exercised within two years it was at an end. Whatever proceedings were instituted to acquire title, according to section 6 of the Laws of 1867, must be in pursuance of laws then in force. And, by section 9 of chapter 209, Laws of 1839, the mayor, aldermen, and commonalty were authorized, at any time before confirmation of the report of the commissioners by the court, to discontinue all *323 further proceedings without an application to the court This power of the mayor, aldermen, etc., has been transferred to the commissioners of the department of parks. (Session Laws of 1871, chap. 290, § 11.) And I am unable to discover any satisfactory reason why the commissioners were not vested with the same power; and, having exercised it, the court had no authority to interfere and reverse their action. That the act of 1839 was then in force, and applicable, it appears to me is quite obvious; and, unless it can be made to appear that it is changed by the act of 1871, it cannot be disregarded. It is claimed that it is excluded from applying to the act of 1871; but, as we have seen, it is embraced within the provisions relating to the same subject. There is nothing in the act itself which indicates that its requirements are absolute and of a mandatory character. It is true it contemplated the location of a parade ground, but this was to be done in accordance with existing provisions of law, and not otherwise. The language employed, that it “ shall become and be one of the public squares, etc.,” did not mean that this was to be done without regard to the usual forms of law prescribed for establishing a public park, but that it might be done if the law was complied with, and the proceedings for that purpose conducted to a favorable termination, without being discontinued.
The word “ shall ” is often employed the same as the word “ may,” and does not necessarily convey an absolute direction without any qualification. It was not, I think, essential that the act itself should expressly confer the power to discontinue, but it was one of the incidents connected with the proceedings which the law authorized. It was a transfer of power to the commissioners which had previously been enjoyed by the municipal authorities. The discretion which was conferred was not confined to the location, or the determination of the time within two years, but to the right to discontinue if, as I think, it can be properly assumed that the act of 1839 is applicable; and the determination that it was for the public interest that the park, or parade ground, should be laid out *324 was not a final determination which could not be revoked. The supposed inconveniences which might arise from a failure to carry out the act are considerations which cannot be claimed as seriously affecting the interpretation to be placed upon it and the provisions connected therewith. The same difficulties would exist in all cases where owners were disappointed in disposing of their property at a full price, or where they were holding the same until a determination was finally had as to the improvement being carried into effect.
The exercise of the right of eminent domain is not authorized under the Constitution (art. 1, § 7) without compensation to the owner; and it cannot, I think, be contended, legitimately, because the legislature has provided for establishing a public park, that this has been done without complying with certain provisions of law which have never been carried into effect. The discontinuance of the proceedings renders the act of no effect; and the owners are restored thereby to the same position which they originally had. The act of the legislature, of itself, was not a legal condemnation of the land, without further proceedings being carried out as the law required, and as was contemplated.
Under the provisions of the act of 1813 (chap. 86), which are still in force, in reference to applications for the appointment of commissioners and the estimate of damages in opening or laying out any street or public square, the title to the land does not pass to the city until the confirmation of the report of the commissioners of estimate and assessment. Until this is done the title remains in the owner, with full power to exercise entire control over it, and only subject to the right of the city to acquire title according to law. Whether the power to commence another proceeding exists is not, I think, material, if the right to discontinue is established. Nor has it very direct bearing upon that question. The most that could be claimed on this account if a motion was the appropriate remedy, would be addressed to the sound discretion of the court to which this application was made.
The other suggestions made in the elaborate brief of the *325 appellant’s counsel, do not require any especial comment; and after a careful examination, I am satisfied that the board of commissioners were fully authorized, under the act of 1839 cited, to direct a discontinuance of the proceedings.
Independent of the power to discontinue the proceedings in this case, conferred by the laws especially relating to the city of Hew York, I am of the opinion that such right is fully established by the decision of this court in The Matter of the Commissioners of Washington Park of the City of Albany (56 N. Y., 144). The case arose on an application to discontinue, after the commissioners of appraisal had completed their appraisal but before the report was confirmed. The first section of the act under which the proceedings were had (Laws of 1872, chap. 45), authorized the commissioners to take lands for a public park, and declared that the land so selected “shall be deemed to have been taken by the city of Albany as and for public use, for a public park, and are hereby declared to be such,” etc. The court held that a public body or public officers, to whom the right of eminent domain has been delegated by the legislature for public purposes exclusively, may be permitted to discontinue proceedings instituted by them, before the title is acquired and the rights resulting therefrom have become vested in the property holder; that, under the act in question, title was only acquired on final confirmation of the report of the commissioners of appraisal and payment or deposit of the compensation ; that the General Term had power to direct a discontinuance of the proceedings upon application made; and even if the exercise of this power was discretionary, with the exercise of that discretion this court would not interfere. It will be observed that the act last cited, like the act of 1871 (supra), declared in substance that the lands taken should be a public park; and there is no such essential difference in the provisions of the two acts as would authorize an interpretation that the one was mandatory while the other was directory. Rapallo, J., who delivered the opinion of the court, says in reference to the clause above cited, that it “ is distri *326 butive, and its proper construction is, that private property, when acquired by purchase or proceedings under the act and existing statutes, when selected, etc., shall be deemed to have been taken, for the purposes of a park,” etc. It is also held that the English cases, some of which are cited in the brief of the appellant’s counsel, here have no application; and after discussing the authorities on the subject, it is said that as to the city of New York, the doctrine of the decisions cited have been incorporated in the statute, and application to the court for leave to discontinue dispensed with, citing Laws of 1839 chapter 209, section 7. This decision is directly in point, and, I think, disposes of the case. Even if the statute last cited was not applicable, the court, upon application, would have no doubt granted the proper relief. They have virtually done so, in denying the motion of the appellants; and the order of the General Term should be affirmed, with costs.
All concur.
Order affirmed.